718 A.2d 678

Diana A. COWLES, et al.

v.

MONTGOMERY COUNTY, Maryland, et al.

No. 1949, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Oct. 5, 1998.

Norman G. Knopf (Dennis M. Cate and Knopf & Brown, on the brief), Washington, DC, for appellants.

Judson P. Garrett, Jr. (Charles W. Thompson, Jr. and Karen L. Federman Henry, on the brief) Rockville, for appellee Montgomery County.

Stanley D. Abrams (Cathy G. Borsten and Abrams, West Storm & Diamond, P.C., on the brief), Bethesda, for appellees.

Argued before HOLLANDER and EYLER, JJ., and JAMES S. GETTY, Judge (retired), Specially Assigned.

EYLER, Judge.

This appeal involves the propriety of Montgomery County's issuance of a use and occupancy permit to appellee Paula Sue Heltzer for the operation of a tutoring center, pursuant to a special exception, in a residential neighborhood. Appellants [1] appealed the issuance of the permit to the Board of Appeals for Montgomery County (the Board) on the ground that the permit had been issued in violation of the County's zoning ordinance. More specifically, appellants contended that the subject property was not in compliance with certain conditions of the special exception. The Board denied the administrative appeal and the Circuit Court for Montgomery County affirmed. Finding no error, we affirm the judgment of the circuit court.

## Factual Background

On December 24, 1992, Ms. Heltzer applied for a special exception to operate a private educational institution, a tutoring center, in a residential neighborhood on Falls Road in Potomac, Montgomery County, Maryland. The Board held public hearings on April 14 and May 18, 1993. Several citizens appeared at the hearings and objected to the proposed

---

1. The first named appellant in this Court is Diana A. Cowles. The other appellants are various individuals and the West Montgomery County Citizens Association, Inc.

use. The Board granted the special exception on June 25, 1993, subject to certain conditions. Two of the conditions are pertinent to the issues before us, and appear in the Board's opinion as follows:

1. Petitioner will be bound by all testimony and evidence in the record submitted by the petitioner.

2. Petitioner must submit a landscape, lighting and parking plan to the technical staff at M–NCPPC[2] for review and approval. The parking area must be shifted more to the north side of the rear yard. Particular attention must be paid to screening for the parking area and along the property line between the subject property and the property to the south. Two copies of the approved plan must be submitted to the Board for its records. Plant material must be maintained and replaced as necessary.

Pursuant to the second condition, Ms. Heltzer submitted a landscape, lighting, and parking plan to the technical staff at M–NCPPC, which was approved. Subsequently, in order to comply with safety and fire codes, amended plans were submitted and approved, and these plans were then implemented.

Several neighbors filed a petition for judicial review of the Board's decision in the Circuit Court for Montgomery County. The circuit court affirmed the Board's decision and this Court affirmed the circuit court's decision in an unreported opinion filed February 3, 1995. *West Montgomery County Citizens Association v. Montgomery County, Maryland,* No. 954, September Term, 1994.

In order to operate the tutoring center, it was necessary for Ms. Heltzer to obtain a use and occupancy certificate. The certificate was issued by the Department of Permitting Services[3] (the Department) on March 15, 1996. Before issuing the certificate, it was necessary for the Department to conduct

---

**2.** Maryland–National Capital Park & Planning Commission.

**3.** At the time of issuance of the permit, the Department of Permitting Services was known as the Department of Environmental Protection.

inspections and determine compliance with the Montgomery County Code, including its zoning ordinance. *See* Montgomery County Code 1994, §§ 8–28 and 59–A–3.22.[4] Section 59–A–3.22 provides in pertinent part as follows:

> Before any building, structure or land can be used for or converted to a special exception use, the Director must issue a use and occupancy permit certifying compliance with the requirements, representations, and conditions contained in the opinion of the Board, the Hearing Examiner, or the District Council, as specified in § 59–G–1.1.[5] The Director must not issue a use and occupancy permit until: (a) the applicant has certified to the Department that construction or alteration has been completed and any screening or landscaping has been installed, in accordance with the opinion; and (b) the Department has determined, on the basis of a thorough final inspection, that the property conforms to the plans and conditions specified by the opinion. . . .

Several of the neighbors, who are also appellants herein, appealed the issuance of the certificate to the Board. The Board conducted hearings on July 10 and December 10, 1996, and on March 17, 1997, affirmed the Department's decision. At the hearings, the Board heard testimony from the staff of the M–NCPPC and the Department's zoning supervisor. Those witnesses testified that Ms. Heltzer had complied with the Board's opinion granting the special exception and had complied with the plans approved by the technical staff. The witnesses acknowledged, however, that they had not reviewed the entire record of the special exception proceedings.

One of the arguments made by appellants to the Board was that the issuance of the use and occupancy certificate was inconsistent with Condition No. 1 in the Board's opinion granting the special exception. Appellants argued that the

---

4. Chapter 8 is entitled "Buildings" and Chapter 59 is the "zoning ordinance."

5. Section 59–G–1.1 of the Montgomery County Code authorizes the Hearing Examiner and the Board of Appeals to grant petitions for special exceptions.

Board, by imposing the condition, incorporated the entire record and that the Department was required to review the entire record and not rely just on the Board's opinion issuing the special exception and the plans as approved by the technical staff. Appellants asserted that such a review would have revealed that Ms. Heltzer was not in compliance with all representations contained in that record. Specifically, according to appellants, Ms. Heltzer represented that the property would maintain its residential character and would look like a home; that it would be buffered by a full landscaping screen; that lighting would be low level; and that the exterior of the building would not be changed. Instead, appellants stated the property has a commercial appearance with a large parking lot, an absence of buffer plantings, and extensive lighting. Further, according to appellants, changes have been made to the exterior of the building.

The Board affirmed the issuance of the certificate. In doing so, the Board found that the standard steps involved in approval of a use and occupancy certificate had been followed. Specifically, the Board found that the Department's practice of ensuring compliance with the approved plans and with the evidence and representations referenced in the Board's opinion was sufficient. The Board recognized that the parking lot was not located in accordance with Ms. Heltzer's proposal in her special exception application, but noted that the Board had required it to be moved. The Board also found that the technical staff had done an excellent job of implementing the Board's opinion with respect to the landscape, lighting, and parking plan. In short, the Board found that, as the plan for use evolved, the Department's determination that Ms. Heltzer had complied with the special exception requirements contained in the Board's opinion, the amended plans, and the fire and safety requirements of the County Code was supported by the evidence. The following excerpt from the Board's opinion is particularly relevant to the issue raised by appellants on this appeal:

> In denying the appeal, the Board is very aware that at issue in this case is whether or not an applicant is bound by

his testimony and representations. The Board is clear that it is the case that an applicant is so bound as the code requires. Obviously, revisions to testimony made during the course of a hearing must be reflected in the Board's Opinion. In the instant case, exactly that was done. Concerns about the parking lot necessitated its relocation. The Board was clearly aware that the landscaping and lighting plan would, therefore, need revision during the M–NCPPC review. The Board specifically conditioned the original grant on that review. It is rational to expect revisions to occur based on the Board's directive. To do otherwise would have in effect caused a separate and more serious conflict. The County agencies were well within their authority in approving changes to the landscape plan.

The Board excluded appellants' proffer of the entire record from the special exception hearing and certain specifically identified evidence consisting of the application for special exception, a landscape plan, and excerpts of Ms. Heltzer's testimony at the special exception hearing. The dissenting member of the Board concluded that the evidence should have been admitted and, on that basis, dissented.

Appellants filed a petition for judicial review in the Circuit Court for Montgomery County. Montgomery County, also an appellee, filed a motion to intervene in the circuit court, which was granted. The circuit court affirmed the Board's decision, and appellants filed a timely appeal to this Court.

### Standard of Review

In reviewing a case such as this, we essentially must repeat the circuit court's review of the Board's decision. *Art Wood Enters. v. Wiseburg Ass'n,* 88 Md.App. 723, 728, 596 A.2d 712 (1991), *cert. denied,* 325 Md. 397, 601 A.2d 130 (1992); *Mortimer v. Howard Research & Dev. Corp.,* 83 Md.App. 432, 442, 575 A.2d 750 *cert. denied,* 321 Md. 164, 582 A.2d 499 (1990). When conducting this review, we shall not give any deference to the Board's conclusions of law "beyond the weight merited by the persuasive force of the reasoning employed." *Friends v. Baltimore Gas & Electric Co.,* 120

Md.App. 444, 466, 707 A.2d 866, *cert. granted,* 350 Md. 488, 713 A.2d 980 (1998); *People's Counsel v. Prosser Co.,* 119 Md.App. 150, 168, 704 A.2d 483, *cert. denied,* 349 Md. 494, 709 A.2d 139 (1998). By contrast, we accept the Board's findings and conclusions of fact "if they are based on substantial evidence and if reasoning minds could reach the same conclusion based on the record." *Columbia Road Citizens' Ass'n v. Montgomery County,* 98 Md.App. 695, 698, 635 A.2d 30 (1994). *See also Friends,* 120 Md.App. at 465, 707 A.2d 866; *Prosser Co.,* 119 Md.App. at 167–68, 704 A.2d 483; *Colao v. Prince George's County,* 109 Md.App. 431, 458, 675 A.2d 148 (1996), *aff'd,* 346 Md. 342, 697 A.2d 96 (1997). Similarly, we apply the substantial evidence test to the Board's application of the law to the facts, a mixed question of law and fact. *Friends,* 120 Md.App. at 466, 707 A.2d 866; *Meadowridge Indus. Ctr. Ltd. Partnership v. Howard County,* 109 Md.App. 410, 419–20, 675 A.2d 138 (1996). That is, we must affirm the Board's conclusions if a reasoning mind could reasonably have reached the same conclusions consistent with a proper application of the controlling legal principles. *Meadowridge,* 109 Md.App. at 419–20, 675 A.2d 138. Finally, we may uphold the decision of the Board only on the basis of reasons and findings upon which the Board relied. *Meadowridge,* 109 Md.App. at 420, 675 A.2d 138. *See also United Steelworkers v. Bethlehem Steel,* 298 Md. 665, 679, 472 A.2d 62 (1984).

## Parties' Contentions

Appellants contend that the issue before us is purely one of law. In particular, they maintain that "the Board erred in concluding, as a matter of law, that it lacked the authority to impose a condition on the grant of the special exception requiring Ms. Heltzer to be bound by all of her representations of record." Pertinent to appellants' position is § 59–A–4.127, which provides:

**Binding testimony.** Special exceptions or variances granted by the board shall be implemented in accordance with the terms and conditions set forth in the opinion of the board which conditions shall include the requirement that

the petitioner shall be bound by all of his testimony and exhibits of record, the testimony of his witnesses and representations of his attorneys, to the extent that such evidence and representations are identified in the board's opinion granting the special exceptions or variance.

Appellants assert that the Board construed § 59–A–4.127 as precluding it from imposing a condition binding Ms. Heltzer to all representations of record and that, therefore, all representations not expressly reiterated in the opinion were not binding. For that proposition, appellants rely on a statement by the Board's presiding officer at the December 10, 1996 hearing and a statement in the Board's opinion. The statement at the December 10, 1996 hearing was as follows:

I think that the fact is, in fact, that our interpretation of the Code is what governs this body and what governs the— governs Montgomery County, and we are hopeful that our interpretation is appropriate. As far as the Code is concerned, the Code is very straightforward. The Code is what states that what is in our opinion is what is the law and what is the fact.

The statement in the Board's opinion is as follows:

In denying the appeal, the Board is very aware that at issue in this case is whether or not an applicant is bound by his testimony and representations. The Board is clear that it is the case that an applicant is so bound as the Code requires.

Relying upon §§ 59–A–2.2(b) and 59–G–1.22, appellants argue that the Board has the authority to expand the binding testimony requirement of § 59–A–4.127 to make binding upon the applicant all representations, regardless of whether they are identified in the Board's opinion. Appellants note that § 59–A–2.2(b) provides that the requirements in the zoning ordinance are the minimum requirements for the protection of the health, morals, safety, and general welfare of the public. Further, § 59–G–1.22 provides that the Board is "empowered to add to the specific provisions enumerated in this Section, any others that it may deem necessary to protect adjacent

properties, the general neighborhood, and the residents, workers, and visitors therein."

Appellants conclude that (1) the Board has the power to bind and did bind Ms. Heltzer to all of her representations, whether or not expressly identified in the Board's opinion, (2) that holding an applicant to all representations of record is essential for the proper administration of special exceptions, and, furthermore, (3) that this has been the longstanding interpretation and practice of the Board, which practice is entitled to great weight.

Montgomery County's only concern as intervenor is the question of interpretation and application of the requirement in § 59–A–4.127 relating to binding testimony and representations. According to the County, the Board cannot change a statutory requirement by omitting part of the language of the statute or, in this case, the ordinance.[6] Additionally, the County asserts that the plain language of § 59–A–4.127 cannot be changed by administrative practice, and finally, that it would be unreasonable and burdensome to require the Department to review transcripts and discern the parts that are binding because there would be no way to discern the Board's intention, given the various changes and modifications that occur during the process of applying for and obtaining a special exception.

Ms. Heltzer disagrees with appellants that the issue before us is purely a question of law. She asserts that the Board determined that the use and occupancy certificate was issued consistent with the Board's special exception opinion and the zoning ordinance, and that the Department's action was entitled to deference. Ms. Heltzer asserts that the Board never held that it lacked legal authority to condition the grant of the special exception on a requirement that Ms. Heltzer be bound by representations in the record. Consequently, according to

---

6. A comparison of the condition in the Board's opinion to the section of the ordinance in question reveals that the language is identical except that the last clause of the section of the ordinance does not appear in the condition.

Ms. Heltzer, the question of whether the Board erred is a mixed question of law and fact or a question of fact. Additionally, Ms. Heltzer asserts that administrative practice and interpretation of the relevant ordinances actually favors her position.

Finally, according to Ms. Heltzer, the approach taken by the Board is the only workable approach. Special exceptions are presumptively valid under the law, and to deny a special exception, the Board must find adverse effects beyond those inherently associated with such a special exception use, irrespective of its location. *See Harford County v. Earl E. Preston, Jr., Inc.,* 322 Md. 493, 497–99, 588 A.2d 772 (1991); *Schultz v. Pritts,* 291 Md. 1, 11, 432 A.2d 1319 (1981). The concerns of neighbors are not necessarily determinative. The question is whether there was substantial evidence to support the Board's finding of compliance with its opinion and the ordinance. A contrary result is unworkable because it would require review of the entire record, which would frequently contain inconsistencies, proposals, or representations that were ultimately superseded, or perhaps rejected, by the Board. According to Ms. Heltzer, it is the longstanding practice of the Department not to engage in such a review.

## Analysis

According to appellants, the Board's determination that Ms. Heltzer was bound only by representations identified in its special exception opinion was premised on its determination that it was not legally authorized to require that all representations of record be binding. According to the circuit court, the Board's decision was based upon its interpretation of the special exception opinion. The Board's opinion is not entirely clear on this matter. No matter how we characterize the underlying premise, however, the Board's opinion raises a legitimate issue of statutory interpretation of § 59–A–4.127 that has not previously been interpreted by Maryland's appellate courts.

We find no error in the Board's interpretation of the law. A requirement that an applicant shall be bound by all testimony

and exhibits of record has impractical aspects that appellants do not acknowledge. First, in order to know what might be binding, one would have to know the content of the representations and exhibits, a goal that can be accomplished only by reviewing all the exhibits and either hearing all of the live testimony or reviewing the transcripts of the testimony. Further, as both the Board and the circuit court noted, the plan initially submitted by the applicant often is modified by the Board's opinion, as it was in the instant case, and thus, the applicant could not possibly be held to all of her representations without modification. Absent a clear statement in one place, and the Board's opinion is the most logical place for it, the Board's intention with respect to conditions would be unclear, especially in proceedings containing several evolutionary changes.

As between the Board and the Department, we believe that the zoning ordinance assigns to the Board the burden to identify the representations that are binding upon the applicant. Simply from the consideration of administrative efficiency, the Board, at the time it prepares its opinion, having listened to all of the live testimony and reviewed all of the exhibits, is in a much better position to identify the applicant's material representations than is the Department after the fact. Further, the Board, at the time it prepares its opinion, is in the best position to identify those representations that the Board has deemed essential to the conditions and requirements underlying the Board's approval.

Our interpretation is consistent with the plain language of the pertinent ordinance provisions. Section 59–A–4.127 expressly provides that special exceptions "shall be implemented in accordance with the terms and conditions *set forth in the opinion.*" (Emphasis added.) It further provides that "the petitioner shall be bound by all of his testimony and exhibits of record, the testimony of his witnesses and representations of his attorneys, *to the extent that such evidence and representations are identified in the board's opinion ....*" (Emphasis added.) The ordinance contemplates that the opinion shall provide sufficient detail to inform interested persons,

including the Department, of the terms and conditions of the special exception. Similarly, § 59–A–3.22 directs the Department to look to the opinion to certify the applicant's compliance:

**59–A–3.22 Use–and–occupancy permit for a special exception.**

Before any building, structure or land can be used for or converted to a special exception use, the Director must issue a use-and-occupancy permit certifying compliance with the requirements, representations and conditions *contained in the opinion* of the Board, the Hearing Examiner or the District Counsel, as specified in Section 59–G–1.1. The Director must not issue a use-and-occupancy permit until:

(a) The applicant has certified to the Department that construction or alteration has been completed and any screening or landscaping has been installed, *in accordance with the opinion;* and

(b) The Department has determined, on the basis of a thorough final inspection, that the property conforms to the plans and conditions *specified by the opinion;* except that

(c) A temporary use-and-occupancy permit may be issued for a period not to exceed 90 days upon evidence that landscaping and screening must be delayed because of adverse weather or other conditions beyond the control of the applicant.

(Emphasis added.)

We find no requirement in the ordinance that the Board set forth each condition in exquisite detail, and we see no reason why the Board could not incorporate by reference or use readily identifiable references when it can be done in a clear and unambiguous manner. On the other hand, because of the nature of a special exception proceeding and the clear language contained in the pertinent sections, the burden is on the Board to identify the conditions applicable to the grant of a special exception.

Sections 59–A–22(b) and 59–G–1.22(a) do not lead us to a different result. They give the Board certain powers but do not purport to vitiate the requirement in § 59–A–4.127 that conditions imposed pursuant to that power be set forth in the opinion of the Board, including an identification of evidence and representations intended to be binding.

It is not clear from the record the extent to which the Board's prior practice has been inconsistent with its practice in this case. With respect to the legal issue posed by appellant, it is not controlling in any event in light of the clear language contained in § 59–A–4.127. *See Sugarloaf Ass'n v. Northeast Md. Waste Disposal Auth.,* 323 Md. 641, 663 n. 2, 594 A.2d 1115 (1991) (administrative practice entitled to no weight when inconsistent with statutory scheme); *Inlet Assocs. v. Assateague House Condominium Ass'n,* 313 Md. 413, 432–33, 545 A.2d 1296 (1988); *Brzowski v. Maryland Home Imp. Com'n,* 114 Md.App. 615, 634, 691 A.2d 699, *cert. denied,* 346 Md. 238, 695 A.2d 1227 (1997); *Baines v. Board of Liquor License Comm'rs,* 100 Md.App. 136, 141, 640 A.2d 232 (1994).

■ The Board determined that the conditions set forth in its opinion had been met, and there is substantial evidence to support that conclusion. Specifically, the Board found that the parking lot was not in the location Ms. Heltzer had proposed in her application because the Board required her to move it; that the technical staff did an excellent job of translating the Board's opinion into the landscaping, lighting, and parking plan that was approved and implemented; that screening was consistent with the opinion and conformed to code requirements; that lighting was in compliance with the opinion;[7] and finally, that the maintenance and improvements to the property were proper and within the Board's approval. There is ample testimony to support those conclusions.

---

**7.** More particularly, the Board concluded that all lighting fixtures were pre-existing with the exception of two fixtures mounted at rear exits to conform to health and safety code requirements.

Appellee Heltzer's motion to strike portions of the record extract and argument in appellants' brief is denied.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**